Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ISABELLE WESTBAY, Respondent, for Compensation under the Workmen's Compensation Law, on Account of the Death of Her Brother, ROBERT WESTBAY, v. CURTIS & SANGER, Employer, and EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., Insurance Carrier, Appellants.

Third Department, July 7, 1921.

Workmen's Compensation Law — brokerage house not within second group 45 of § 2 — employees of brokerage house not workmen or operatives — injury arising out of employment — messenger or runner for brokerage concern did not receive injury arising out of employment where he was killed by explosion in street.

A brokerage house, having about forty-five employees, consisting of clerks, salesmen and stenographers, and messengers or runners whose duties consist chiefly of running errands and carrying packages to and from banks and also in doing some manual labor, is not within second group 45 of section 2 of the Workmen's Compensation Law.

None of the employees mentioned come within the classification of workmen or operatives within the meaning of such terms as used in the Workmen's Compensation Law.

The decedent, a messenger or runner in the brokerage house, who was killed in the streets of New York city by an explosion of unknown origin, was killed in the course of his employment, but his death was not caused by an injury arising out of the employment and the accident was not one within the contemplation of the statute nor within the purview of the parties to the contract of insurance.

JOHN M. KELLOGG, P. J., and COCHRANE, J., dissent.

APPEAL by the defendants, Curtis & Sanger and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 11th day of November, 1920.

Bertrand L. Pettigrew [Walter L. Glenney of counsel], for the appellants.

Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General, of counsel], for the respondents.

WOODWARD, J.:

The claimant's intestate was instantly killed while on Wall street, New York, on the 16th day of September, 1920, on the occasion of the mysterious explosion in that city. His employers were Curtis & Sanger, stockbrokers, occupying offices at 49 Wall street, and his occupation was that of a messenger or runner, and at the time of the explosion he was on the street in pursuance of his duties as a messenger. The messenger was, therefore, killed while in the performance of his duties and in the course of his employment. The questions raised by this appeal are whether the injuries arose out of the employment, and whether the decedent, Robert Westbay, brother of the infant claimant, was covered by the provisions of the Workmen's Compensation Law.

An " employer," within the meaning of the Workmen's Compensation Law, " means a person   *   *   *   employing workmen in hazardous employments " (§ 3, subd. 3, as amd. by Laws of 1916, chap. 622, and Laws of 1917, chap. 705), and an " employee " " means a person engaged in one of the occupations enumerated in section two or who is in the service of an employer whose principal business is that of carrying on or conducting a hazardous employment upon the premises or at the plant, or in the course of his employment away from the plant of his employer." (§ 3, subd. 4, as amd. by Laws of 1916, chap. 622, and Laws of 1917, chap. 705.) Section 2 of the act (as amd. by Laws of 1916, chap. 622; Laws of 1917, chap. 705; Laws of 1918, chaps. 249, 633, 634, 635, and Laws of 1920, chap. 536,) makes no provision for classifying brokerage houses as hazardous employments, and unless Curtis & Sanger come within the special provisions of second group 45, as added by chapter 634 of the Laws of 1918, there can be no foundation for the award here under review. This new group by its terms applies to " All other employments not hereinbefore enumerated carried on by any person, firm or corporation in which there are engaged or employed four or more workmen or operatives regularly, in the same business or in or about the same establishment, either upon the premises or at the plant or away from the plant of the employer, under any contract of hire, express or implied, oral or written, except farm laborers and domestic servants." The State Industrial Commission has

found as conclusion of fact that the said employer was engaged in the brokerage business, " having regularly in [its] employ four or more workmen or operatives," and upon this alleged fact has made an award to the infant sister of the deceased.

The undisputed evidence before the Commission was that Curtis & Sanger had about forty-five employees on an average; that these were clerks and salesmen and stenographers. Upon an analysis of these employees and an inquiry into their particular duties it was developed that there were twelve or fourteen messengers or runners, that these fluctuated, and that their duties consisted chiefly of " running errands, such as carrying securities between various banks and brokerage· houses and also doing whatever manual labor, such as sending out of circulars and carrying of mail, or whatever manual labor existed in a brokerage office;" and it was further developed that these runners brought up the boxes of securities each morning and took them back at night to the vaults in the basement, and that these boxes were some of them so heavy that " a small boy couldn't stagger under them," whatever that may mean. Then there were four stenographers and two telephone girls and one woman telegraph operator and one man telegrapher and ten blotter clerks, entry clerks and marking clerks, a cashier and an assistant cashier, and a colored porter, besides two special officers who appear to be classed with the runners.

The Commission does not point out which of these forty-five persons, more or less, were regularly employed as workmen or operatives. There is an opinion by Commissioner Sayer in which he says that there are two telephone and two telegraph operators, and that these employments, if performed for a telephone or telegraph company, would come under the named employments of groups 5 and 6 of section 2 of the act (as amd. by Laws of 1917, chap. 705), and that " they are clearly ' operatives ' within the meaning of group 45." He also refers to the fact of there being a colored porter, who appears to have had the characteristics of a domestic servant rather than that of a laborer in the common understanding of the term, and then says: " The duties of these runners were in a measure manual. They acted as porters and messengers, carried packages, sometimes of considerable weight, to and

from the postoffice, boxes from the safe-deposit vaults, etc. I think for the purposes of the law they were ' workmen or operatives,' and the result of that is to bring all of the employees of this employer under the act." (24 State Dept. Rep. 408.) The Commission appears to have acted upon this opinion, and we are persuaded that in this it erred.

The Court of Appeals, in *Matter of Europe* v. *Addison Amusements, Inc.* (231 N. Y. 105). has had this new group 45 under consideration, and after pointing out that the evidence was sufficient to show that four individuals named were actually engaged in manual labor regularly in connection with the performances of a band which toured the country for hire, the court say: " It is not necessary for us finally to define or limit the words ' workmen ' or ' operatives ' as used in this subdivision. Generally speaking a workman is a man employed in manual labor whether skilled or unskilled, an artificer, mechanic, or artisan, and an operative is a factory hand, one who operates machinery. (Webster's New International Dictionary.) There is a marked distinction between a workman and an employee. Although in a general sense all workmen and operatives are employees, yet all employees are not workmen or operatives within the meaning of this law. The words ' workmen ' and ' operatives ' are used in their narrower meaning. (*Matter of Bowne* v. *Bowne Co.,* 221 N. Y. 28.)" This distinction is clearly indicated by the definitions of section 3 of the act, and is in entire harmony with the spirit of the enactment. The amendment to the Constitution (Art. 1, § 19), under which the enactment finds its justification in law, is made contingent upon the expense of the system being held to be a proper charge in the cost of operating the business of the employer and it was clearly understood and contemplated that the Workmen's Compensation Law should be just what its name indicates — a special provision for the industrial workers of the State as distinguished from clerks, stenographers, errand boys, and the like. This is shown by the summary of the Wainwright Commission in its first report to the Legislature (Senate Documents 1910, vol. 25, No. 38, p. 68) as to the reasons for a revolutionary change in the law in relation to the industrial system, which reads as follows:

" *First*, that the present system in New York rests on a basis that is economically unwise and unfair, and that in operation it is wasteful, uncertain and productive of antagonism between workmen and employers.

" *Second*, that it is satisfactory to none and tolerable only to those employers and workmen who practically disregard their legal rights and obligations *and fairly share the burden of accidents in industries.*

" *Third*, that the evils of the system are most marked in hazardous employments, where the trade risk is high and serious accidents frequent.

" *Fourth*, that, as matter of fact, workmen in the dangerous trades do not, and practically cannot, provide for themselves adequate accident insurance, and, therefore, the burden of serious accidents falls on the workmen least able to bear it, and brings many of them and their families to want."

This was followed by a declaration that " these results can, we think, be best avoided by compelling the employer to share the accident burden in intrinsically dangerous trades, since by the fixing of the price of his product the shock of the accident may be borne by the community," and the report recommended that an elective right be given to permit those outside the hazardous occupations to come within the operation of the law, which has been done. (See *Ives* v. *South Buffalo R. Co.*, 201 N. Y. 271, 286, 287.)

Clearly the letter and the spirit of the law do not contemplate the situation shown by this record. There are no workmen employed by Curtis & Sanger within the meaning of the Workmen's Compensation Law; no employee in a mill or factory would recognize one of these employees as a laboring man, and if we are to have class distinction there is no reason why one who would not have recognition in the class, or who would not be willing to be so classified in ordinary life (*Matter of Bowne* v. *Bowne Co.*, 221 N. Y. 28, 33, 34), should be inducted into it for the purpose of imposing a burden upon the insurance carrier which has never been undertaken. The statute, and the constitutional innovation, proceed upon the theory of an economic adjustment of the accident burden of the productive industry of the State, not the insurance of individuals against the accidents or crimes of those who are

in no manner connected with the commercial and productive life of the community, and it is unthinkable that the Legislature ever contemplated that an errand boy in a brokerage office should be protected against a crime or an accident in the public streets of a city, having no relation to any industrial pursuit. The decedent was killed in the course of his employment, just as many others were killed, not by reason of anything which happened in the brokerage office, or because of the brokerage business, so far as we have any information upon that subject. It was not one of the accidents within the contemplation of the lawmakers, nor within the purview of the parties to the contract of insurance, and the award cannot be sustained. The brokerage firm were not employers within the language or spirit of the act, and none of the employees were workmen or operatives within the contemplation of the law, and it is not necessary to take up the intricate question of the liability of the insurance carrier and the employer to one who was employed in a hazardous undertaking which called for his presence in the street at the time of the explosion.

The award should be reversed and the claim dismissed.

All concur, except JOHN M. KELLOGG, P. J., and COCHRANE, J., dissenting.

Award reversed and claim dismissed.