Before State Industrial Commission, Respondent.

In the Matter of the Claim of Samuel Jurman, Respondent, for Compensation under the Workmen's Compensation Law, v. Hebrew National Sausage Factory, Employer, and The Travelers Insurance Company, Insurance Carrier, Appellants.

Third Department, November 16, 1921.

Workmen's Compensation Law — " workmen or operatives " within § 2, second group 45 — cashier in delicatessen store and lunch room is not workman or operative — cook, waiter, counterman and general utility man are workmen or operatives.

A cashier in a combination lunch room and delicatessen store, whose regular if not sole duty is to receive money, is not a workman or operative within second group 45 of section 2 of the Workmen's Compensation Law.

The cook, the waiter and the counterman, whose duties consisted in cutting meats at the counter and selling articles from it and in assisting as waiter during the lunch hour, and the general utility man, were all workmen or operatives, within the meaning of the law; hence there were four workmen regularly employed and the employment was within the Workmen's Compensation Law.

Appeal by the defendants, Hebrew National Sausage Factory and another, from an award of the State Industrial Commission, entered in the office of said Commission on the 8th day of February, 1921.

On August 9, 1920, the claimant sustained an injury to his right eye by the explosion of a bottle of soda which he was getting from a refrigerator for a customer.

*Benjamin C. Loder* [*William B. Davis* and *E. C. Sherwood* of counsel], for the appellants.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

H. T. Kellogg, J.:

The one question in the case is whether or not " four or more workmen or operatives " were " regularly " employed so that under group 45 of section 2 of the Workmen's Compensation Law the employment was hazardous. The employer conducted a combination delicatessen and lunch room business. There were ten tables in a room at which customers were served

with lunch every noon hour.   Of the delicatessen business we know only that there was maintained a counter from which sausages, ham, meats and potato. salad were sold.   Five persons were regularly employed.   They have been described as a cashier, a cook, a waiter, a counterman and a general helper.   In *Matter of Europe* v. *Addison Amusements* (231 N. Y. 105) it was said: " Generally speaking a workman is a *man employed in manual labor* whether skilled or unskilled, an artificer, mechanic or artisan, and an operative is a factory hand, one who operates machinery."   In *Westbay* v. *Curtis & Sanger* (198 App. Div. 25) it was held that messengers, telegraphers, telephone operators, cashiers, stenographers and bookkeepers in a stockbroker's office were not " workmen " or " operatives " under group 45.   We may safely conclude, therefore, that in this employment the employee who was classed as a cashier and whose regular, if not sole duty was to receive money, was not a " workman or operative."   It is otherwise of the cook and the waiter, not only because their work must have been essentially manual, but for a special reason arising from the wording of the provisions of group 45. Employments are there made hazardous where there are engaged " four or more workmen or operatives regularly, in the same business or in or about the same establishment, * * *   except farm laborers and domestic servants."   This express exception of domestic servants out of the workmen class shows that the Legislature regarded the service of all such persons to be that of " workmen," for it is self-evident that none can be taken from a class who do not, without such taking, belong to it.   It is true that the work of this cook and waiter, because not performed in a private home, was not domestic.   However, it was identical in character with that of domestic cooks and waiters.   Consequently, the Legislature has clearly indicated that the nature of their services is that of " workmen."   The helper was also described as " a general utility man."   Apparently he helped the waiter, the cook and the counterman.   He was a man of all work, and, therefore, a " workman."   The counterman presents a more difficult question. . We know that he cut meats at the counter and sold articles from it to customers.   If his work was simply that of cutting and handing over food, together with charge checks

to be delivered to the cashier, his work was, perhaps, more manual than it was clerical. However, it is a proven fact that for an hour every day he acted as waiter at the lunch tables. This was not as if he were a clerk who incidentally and intermittently did waiter's work. Rather was he a clerk at one time (if ever such) and a waiter at another. It is just as clear that he was thus employed " regularly " as a waiter as that lunch was " regularly " served in the room each day. It seems to us, therefore, that this employee may be counted so that it can justly be said that in this employment there were four " workmen " " regularly " employed, and that the employment was within the Workmen's Compensation Law.

The award should be affirmed.

Present — John M. Kellogg, P. J., Cochrane, H. T. Kellogg, Kiley and Van Kirk, JJ.

Award unanimously affirmed.